[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Date of Sentence: 17 March 1995
Date of Application: 17 March 1995
Date Application Filed: 17 March 1995
Date of Decision: 23 September 1997
Application for review of sentence imposed by the Superior Court, Judicial District of New Haven at New Haven. CR-7-146988.
Ronald Gold, Esq., Thomas Ullmann, Esq. For the Petitioner
Robert O'Brien, Esq., For the State of Connecticut
After a trial by jury the petitioner was found guilty CT Page 10414 of Murder in violation of Conn. Gen. Stat. 53a-54a; Manslaughter 1st Degree in violation of Conn. Gen. Stat.53a-55 (a)(1) and Carrying Pistol without a Permit, in violation of Conn. Gen. Stat. 29-35 (a).
As a result of the convictions the trial court sentenced the petitioner to Life on the crime of Murder, twenty years to serve on the Manslaughter count and five years to serve on the carrying the Pistol without a Permit. The court imposed the sentences consecutively for a total sentence of eighty-five years to serve.
The evidence indicates that the petitioner was involved in an insurance settlement discussion over a fire that happened in his mother's kitchen. At a meeting with the victims the petitioner who was carrying a gun, shot one victim seven times of which five were in the back of the head and the other victim four times resulting in each of their deaths.
At the hearing counsel informed the panel that the petitioner was remorseful for his actions. He noted that the petitioner's father abused him and his mother during his growing years. Most importantly counsel reminded the panel that the petitioner had no prior criminal history and that he has served time in the U.S. Navy. Counsel informed the panel that the actions of the petitioner were done while the petitioner was in psychiatric counseling. After the petitioner fled the scene and went to Florida he purchased a ticket to Costa Rico. Rather than escaping to Costa Rico counsel informed the panel that he turned himself in, the importance of such an act was underscored because Costa Rico has no extradition treaty agreement with the United States. Finally, counsel noted that the petitioner was given the maximum penalty by the court in each count and those counts were run consecutively. He pointed out to the panel that the sentencing judge heard mostly victim remarks during the sentencing and then tersely imposed the maximum sentence without stating his reasons. Counsel also indicated that in the criminal system the petitioner had some strong credits on his side, i.e. no criminal record, military service and he surrendered, however he was given the maximum sentence possible. Counsel felt that we must reserve the sentence imposed on the petitioner for the worst of the offenders, CT Page 10415 certainly those offenders that possess none of the credits the petitioner shows in the record.
The attorney for the state admitted the petitioner had no formal criminal history but informed the panel that a close look at the petitioner's personal history showed a deceitful, problematic person. In the U.S. Navy the petitioner was in trouble enough to merit an administrative discharge. Also it was shown that the petitioner had trouble with woman that were domestic violence in nature. Counsel also noted that the probation officer found the petitioner to be a dangerous individual. He informed the panel of the severe tragic effect that these killings had on each of the victim's families. Counsel felt the facts required the maximum penalty, and it was imposed reasonably by a trial judge who was best informed of the facts and circumstances of the acts of the petitioner. He asked the panel to affirm the sentence imposed.
Our function is to determine whether or not the sentence is fair and equitable with the scope of review required by Section 942 of the Practice Book. In reviewing the remarks of the sentencing court we find, as counsel pointed out, they were very succinct. However in those limited remarks the court indicated it read the letters of the victims and the petitioner's families. The court also stated it read the pre-sentence investigation report prior to its sentencing. Certainly the Division encourages the trial court to fully state its reason for the sentence it imposes. However the limited remarks by the court in this case cover a vast amount of information that serves as the basis of the court's actions. The sentencing court was the trial judge with the ability to observe the witness, hear the testimony and evaluate the demeanor of the petitioner. It also listened to and read the remarks of the victim's family, the petitioner's family, along with the probation report.
Petitioner's counsel also noted that since he had some positive attributes the court went too far in sentencing the petitioner to the maximum. Counsel felt that the maximum should be reserved for those who have no positive attributes whatsoever. We disagree. Here the court was faced with two brutal, violent incomprehensible killings. Certainly there is no rule of law that we know CT Page 10416 of that requires sentencing courts to reserve the maximum sentence for "the worst of the worst". Each trial court must make individual decisions based upon the totality of the circumstances that it observes. A trial court may impose the maximum sentence where a person shows some positive attributes that in the courts mind weigh insignificantly, when compared to the nature and severity of the crime.
Considering the seriousness of the offenses here in which two innocent human lives were taken in such a heinous manner, it cannot be found that the sentence imposed was inappropriate or disproportionate. The public must be protected from such conduct. The sentenced is AFFIRMED.
Norko, J. Klaczak, J. Miano, J.
Judges Norko, Klaczak and Miano participated in the above hearing.